UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

RODNEY MCFARLAND ET AL                CASE NO.  3:25-CV-01667

VERSUS                                JUDGE TERRY A. DOUGHTY

JEFF LANDRY ET AL                     MAG. JUDGE KAYLA D. MCCLUSKY

MEMORANDUM RULING

Before the Court are three Motions to Dismiss [Doc. Nos. 6, 8, and 25]. The first Motion [Doc. No. 6] is filed by Defendant, Friday Ellis, in his official capacity as the Mayor of the City of Monroe ("Mayor Ellis"). Plaintiffs, Bishop Rodney McFarland, Verbon Muhammad, Jr., and Juanita Woods (collectively, "Plaintiffs"), filed an opposition [Doc. No. 15]. No reply was filed. The second Motion [Doc. No. 8] is filed by Defendant, Jeff Landry, in his official capacity as Governor of the State of Louisiana ("Governor Landry"). Plaintiffs filed an opposition [Doc. No. 18] and Governor Landry filed a reply [Doc. No. 20]. Defendant, City of Monroe Fire Chief appointee, Timothy Williams ("Chief Williams"), adopted the two Motions to Dismiss mentioned above [Doc. No. 25].[1]

After carefully considering the parties' filings and applicable law, the Motions are **GRANTED** for lack of subject matter jurisdiction. The Motions are otherwise **DENIED AS MOOT**.

---

[1] Governor Landry, Mayor Ellis, and Chief Williams are collectively referred to as "Defendants".

Page **1** of **15**

## I.   Background

This suit challenges the lawfulness of a recently enacted Louisiana law known as Act 452. *See* 2025 La. Acts 452. On October 31, 2025, Plaintiffs filed the instant suit against Governor Landry, Mayor Ellis, and Chief Williams. The Complaint challenges Act 452 "on the grounds that [it] violates Section 2 of the Voting Rights Act of 1965, 52 U.S.C Section 10301, the Constitution of the United States, and the Louisiana Constitution" by "unlawfully dilute the voting strength of Black Voters in Monroe, Louisiana."[2] Further, Plaintiffs claim that "Act 452's amendment to the Lawrason Act R.S. 33:381(F) is in direct conflict with the Louisiana Constitution and Monroe's Home Rule Charter."[3] The Monroe City Council ("City Council") is made up of five members.[4] Three members—who are the Plaintiffs in this case—are Black and make up a 60% majority of the City Council.[5]

Act 452 amended Louisiana Revised Statute Section 33:381 to add subsection (F), which states:

> (1) Notwithstanding any other provision of law to the contrary, if a vacancy in the office of chief of police or fire chief in a municipality covered by the provisions of the municipal fire and police civil service law continues for a period exceeding twelve consecutive months and the municipal governing authority has failed or declined to confirm an appointment submitted by the mayor or other appointing authority to the governing authority under the requirements of a municipal home rule charter, the governor shall have the authority to make an appointment to the position.

---

[2] [Doc. No. 1, p. 2].
[3] [Id.].
[4] [Id. at ¶ 14].
[5] [Id.].

(2) The governor's appointment shall be selected from among the candidates on the certified competitive employment list for the position and recommended by the mayor or the local governing authority, notwithstanding any prior rejection or denial of confirmation of a candidate by the local governing authority

(3) The mayor or appointing authority shall notify the board of the filling of the vacancy as provided in R.S. 33:2503.

(4) The person appointed to the position shall begin his working test as provided by R.S. 33:2495, and nothing herein shall be construed to prohibit the mayor, board, or appointing authority from removing the probational employee for the reasons and under the circumstances set forth pursuant to that Section.

(5) Nothing in this Section shall be construed to limit the authority of a mayor or local appointing authority to submit appointees to a local governing authority for confirmation under the requirements of a home rule charter.

(6) Any person appointed under this Section must meet all applicable statutory, regulatory, or civil service qualifications for the position of chief of police or fire chief.

(7) This Section shall apply only to municipalities with a population greater than forty-five thousand but no more than forty-eight thousand, as determined by the most recent federal decennial census.

(8) The provisions of this Section shall be retroactive to June 1, 2023.

La. Stat. Ann § 33:381(F) (2025).

The City of Monroe's population is 47,702 and the City is governed by a Home Rule Charter ("the Charter").[6] Section 4-05 of the Charter states, in part, that "the head of the Fire Department shall be the fire chief who shall be appointed in accordance with applicable state law."[7] Louisiana Revised Statute section 33:2494 states:

---

[6] [Doc. No. 9, p. 5].
[7] [Id.].

> Except for the positions of entrance firefighter, entrance police officer, entrance jailer, secretary to the chief, departmental records clerk, and for the entrance classes for which the operation and maintenance of radio, alarm, or signal systems for the respective fire or police service is the primary duty, whenever the appointing authority proposes to fill a vacancy in the classified service, except by demotion, transfer, emergency appointment, or by substitute employment not to exceed thirty days, the appointing authority shall request the board to certify names of persons eligible for appointment to the vacant position. The board shall thereupon certify in writing the names of eligible persons from the appropriate employment list, and the appointing authority shall, if the appointing authority fills the vacancy, make the appointment as provided by this Section.

*Id.* § 33:2494(A)(1).

Section 3-09 of the Charter covers appointment of officers and states that the mayor, "as chief executive officer of the City," has the power to "[a]ppoint and suspend or remove all City administrative officers and employees provided for under this charter, except as otherwise provided by law, this charter or civil service or other personnel rules adopted pursuant to this charter."[8]

Section 7.1 and Section 4-01 of the Charter outline the process for filling vacancies. When a vacancy occurs in the head of a department, the mayor selects a replacement. The City Council must approve this appointment, and the individual serves at the mayor's discretion.[9] On June 10, 2025, Plaintiffs voted against the confirmation of Mayor Ellis's appointee for Fire Chief Williams.[10] Due to the City Council's votes in opposition, Chief Williams was never confirmed.

---

[8] [Id. at p. 6].
[9] [Id. at p. 7].
[10] [Id.].

Regarding Mayor Ellis, Plaintiffs assert that "[he] failed to adequately communicate with Chairman McFarland, Vice Chairman Muhammed, and counsel member Woods, causing a delay in the appointment of a fire chief."[11] Because Mayor Ellis and City Council were at an impasse, Plaintiffs allege that Mayor Ellis "circumvented" their authority by instead engaging in discussion with State Senator Stewart Cathy, Jr.—the sponsor of Act 452—which they claim was intended to dilute the voting power of Black voters in Monroe.[12] On August 14, 2025, Governor Landry called for a 30-day temporary suspension of Act 452 to allow Mayor Ellis and the City Council time to discuss and confirm a Fire Chief.[13] On September 15, 2025—more than a year after the Fire Chief position became vacant—Governor Jeff Landry appointed Chief Williams as Fire Chief in accordance with § 33:381(F).[14]

The three Motions ensued. Mayor Ellis argues that "as chief executive officer for the City of Monroe, Ellis had no authority to sponsor, vote in favor of, or enact any legislation," so the claims should be dismissed under Rule 12(b)(6) for failure to state a redressable claim.[15] Governor Landry also makes this argument, but he also asserts in his Motion that dismissal is warranted under Rule 12(b)(1) for lack of jurisdiction.[16] Chief Williams adopts all arguments in both Motions.[17] Plaintiffs oppose all Motions.

The parties briefed all relevant issues, and the matter is ripe.

---

[11] [Id. at p. 5].
[12] [Id.].
[13] [Id. at p. 8].
[14] [Id.].
[15] [Doc. No. 6-1, p. 4].
[16] [Doc. No. 8, p. 2].
[17] [Doc. No. 25].

## II.     12(b)(1) Motions for Lack of Jurisdiction

### A.     Standard of Review

Federal courts are courts of "limited jurisdiction, and their proceedings are erroneous, if the jurisdiction be not shown upon them." *Hain Celestial Grp., Inc. v. Palmquist*, 146 S. Ct. 724, 730 (2026) (quoting *Kempe's Lessee* v. *Kennedy*, 9 U.S. (5 Cranch) 173, 185, 173, 70 (1809)). A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Huff v. Neal*, 555 F. App'x 289, 296 (5th Cir. 2014) (unpublished) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998)).

"There are two types of attacks against a court's subject-matter jurisdiction: 'facial' and 'factual'." *Reardon v. Am. Airlines, Inc.*, 167 F.4th 294, 299 (5th Cir. 2026) (quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). "The former challenges subject-matter jurisdiction on the pleadings alone, and the court must presume the factual allegations in the complaint are true." *Id.*

In factual attacks, the court may also look at parties' "affidavits, testimony, or other evidentiary materials" to ensure it has subject matter jurisdiction. *Id.* at 300. "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction, there is substantial authority that the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citation modified). Finally—and importantly—a dismissal for lack of jurisdiction is not an adjudication on the merits and, therefore, the plaintiff may pursue the claim elsewhere. Fed. R. Civ. P. 41(b).

Page **6** of **15**

### B.    Analysis

The court analyzes the Motions in descending order of precedence. That is, the Court starts with Governor Landry's Motion and works its way down to Chief Williams' Motion.

### 1.    Plaintiffs do not have Standing Against Governor Landry

Governor Landry argues that Plaintiffs' complaint should be dismissed both for lack of subject matter jurisdiction[18] and for failure to state a claim upon which the Court can grant relief.[19] He also raises an Eleventh Amendment sovereign immunity defense.[20] But in this Court, jurisdiction is tackled first.

The Constitution extends federal "judicial Power" only to "Cases" and "Controversies." U.S. Const. Art. III, § 2, Cl. 1. The Supreme Court, time and again, has held this clause requires that a plaintiff "have standing to sue." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024). Article III standing "requires a plaintiff to first answer a basic question: 'What's it to you?'" *Id.* at 379 (quoting A. Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)). Put differently, a plaintiff must have a "personal stake" in the dispute. *Id.* This ensures courts "decide litigants' legal rights in specific cases, as Article III requires," and "do not opine on legal issues in response to citizens who might 'roam the country in search of governmental wrongdoing.'" *Id.*

---

[18] [Doc. No. 8, ¶ 2].
[19] [Id. at ¶ 4].
[20] [Id. at ¶ 3].

To establish standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, *and* (iii) that the injury likely would be redressed by the requested judicial relief." *Id.* at 380 (emphasis added) (citations omitted). These requirements are "essential and unchanging." *Id.*

Relevant here is the third prong: redressability. "[R]edressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in judgment)). "It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." *Id.*

While "causation and redressability are often 'flip sides of the same coin,'" *All. for Hippocratic Med.*, 602 U.S. at 380 (citation omitted), "[r]edressability can still pose an independent bar *in some cases*." *Id.* at 381 n.1 (emphasis added). This is one of those cases.

The Court assumes without deciding that Plaintiffs (1) suffered an injury in fact, (2) which is fairly traceable to Governor Landry. Plaintiffs cannot, however, prove redressability. To show why, the Court first frames Plaintiffs' alleged injury.

Plaintiffs' alleged injury in fact is straightforward: Act 452 strips the majority-minority City Council of its ability to select appointed city officials, which in-turn dilutes minority voters' votes as they cannot influence the appointment of city

Page **8** of **15**

officials despite voting for candidates who would—but for Act 425—represent the minority voters' interests.[21] This injury, Plaintiffs argue, is traceable to Governor Landry since he enforces Act 452 by appointing an official when Mayor Ellis and the City Council cannot agree. Again, the Court accepts both as a given.

To remedy said injury, Plaintiffs ask the Court to declare Act 452 unlawful[22] and issue an injunction that bars Defendants from enforcing Act 452.[23] These measures, however, would not redress Plaintiffs' harm. The Court relies on *Haaland v. Brackeen*, which has analogically identical facts, to illustrate why.

There, the petitioners sought an injunction, "preventing the federal parties from enforcing" the Indian Child Welfare Act ("ICWA") and "a declaratory judgment that the challenged provisions are unconstitutional." *Haaland*, 599 U.S. at 292. The Supreme Court held that neither request would redress the petitioners' injury. *Id.* The injunction, the Court held, would not alter the ultimate determination—child custody—because ICWA's constitutionality was only "an incidental legal determination" of the petitioners' suit. *Id.* at 293. The Court, likewise, held the petitioners' "request for a declaratory judgment suffers from the same flaw." *Id.* (citation omitted). Even if the Court set aside ICWA, its effect would only be a "possible, indirect benefit in a future lawsuit." *Id.* at 294 (quoting *United States v. Juvenile Male*, 564 U.S. 932, 937 (2011) (per curiam)). And such a future, indirect benefit, "does not preserve standing." *Id.*

---

[21] [Doc. No. 18-1, p. 7].
[22] [Doc. No. 1, ¶ 48].
[23] [Id. at ¶ 52].

Page **9** of **15**

Likewise, here. Even if the Court (1) enjoins Governor Landry from enforcing Act 452 or (2) rules that Act 452 is unlawful, Plaintiffs' injury, appointment of a fire chief they prefer, will not be remedied. The Charter explicitly states that the fire chief "shall be appointed by the mayor, subject to confirmation by the [City Council]."[24] In other words, even without Act 452, Plaintiffs cannot select the fire chief they prefer without Mayor Ellis signing off. Suppose Act 452 does not exist, and Plaintiffs and Mayor Ellis are at an impasse. Same result as now. In this instance, therefore, the Court enjoining enforcement of Act 452 or declaring Act 452 unconstitutional is nothing more than an advisory opinion. And this Court follows a long and distinguished line of federal courts—starting in 1793—that have refused to issue an advisory opinion. *All. for Hippocratic Med.*, 602 U.S. at 378 (citing 13 Papers of George Washington: Presidential Series 392 (C. Patrick ed. 2007)).

The Court's above conclusion might suggest that if Plaintiffs do not have standing, no one may have standing. Two points. First, the Supreme Court has emphatically rejected "that kind of 'if not us, who?' argument as a basis for standing." *Id.* at 396 (collecting cases). Second, "some issues may be left to the political and democratic processes." *Id.* "Vindicating the *public* interest (including the public interest in Government observance of the Constitution and laws) is" equally the responsibility of the other branches of government. *Id.* at 382 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576 (1992)) (internal quotation marks omitted).

---

[24] [Doc. No. 9, p. 7].

Since Plaintiffs cannot show that a judgment by this Court will remedy their injury, they have not met the redressability prong for standing. Consequently, they have not established Article III standing. As such, the Court does not have subject matter jurisdiction over Plaintiffs' claims against Governor Landry, meaning it lacks the "constitutional power to adjudicate" those claims. *Huff*, 555 F. App'x at 296.

Accordingly, Governor Landry's Motion is **GRANTED** as to lack of jurisdiction.

### 2.      Plaintiffs do not have Standing Against Mayor Ellis

Although Mayor Ellis's Motion is a 12(b)(6) Motion for failure of Plaintiffs to state a claim—and not a 12(b)(1) Motion for lack of jurisdiction[25]—federal courts have an "obligation to consider the basis of their jurisdiction *sua sponte* before addressing the merits of a dispute." *Matter of S. Cent. Houston Action Council*, 38 F.4th 471, 472 (5th Cir. 2022) (citation omitted). So, the Court first asks whether Plaintiffs have standing to sue Mayor Ellis. They do not.

The Court does not regurgitate Article III standing law. Rather, as it does earlier, the Court assumes, without deciding, that Plaintiffs (1) suffered an injury in fact, (2) which is fairly traceable to Mayor Ellis. But again, Plaintiffs cannot meet the redressability requirement.

The analysis is similar to Governor Landry's. Even if the Court (1) enjoins Mayor Ellis from enforcing Act 452 or (2) rules that Act 452 is unlawful, Plaintiffs' injury, appointment of a fire chief they prefer, will not be remedied. The Charter explicitly states that the fire chief "shall be appointed by the mayor, subject to

---

[25] [Doc. No. 6-1, p. 1].

confirmation by the" City Council.[26] This means even without Act 452, Plaintiffs cannot select the fire chief they prefer without Mayor Ellis signing off. Thus, Plaintiffs and the Mayor remain at an impasse, even without Act 452. In this instance, therefore, the Court enjoining enforcement of Act 452 or declaring Act 452 unconstitutional is nothing more than an advisory opinion since Plaintiffs still would not be able to pick their preferred fire chief candidate.

Since Plaintiffs cannot show that a judgment by this Court will remedy their alleged injury against Mayor Ellis, they have not met Article III standing's redressability prong. Consequently, they have not established Article III standing. So, the Court does not have subject matter jurisdiction over Plaintiffs' claims against Mayor Ellis, and, therefore, it lacks the "constitutional power to adjudicate" them. *Huff*, 555 F. App'x at 296.

### 3.    Plaintiffs do not have Standing Against Chief Williams

Finally, there is Chief Williams. Chief Williams adopts all arguments made by Governor Landry and Mayor Ellis.[27] That is, he too makes a lack of subject matter jurisdiction argument and a failure to state a claim argument. As always, jurisdiction comes first.

Once again, Plaintiffs do not have standing to sue. This time, however, there is a more obvious reason. Plaintiffs cannot prove the second requirement—causation. Again, to see why, the Court must first re-state Plaintiffs' injury.

---

[26] [Doc. No. 9, p. 7].
[27] [Doc. No. 25].

Plaintiffs' alleged injury in fact is that Act 452 strips the majority-minority City Council of its ability to select appointed city officials, which in-turn diminishes the effectiveness of minority voters' votes as they cannot influence the appointment of city officials despite voting for candidates who would—but for Act 425—represent the minority voters' interests.[28]

Plaintiffs do not point out, however, how their injury is traceable to Chief Williams' conduct. This is because they cannot. "Plaintiffs attempting to show causation generally *cannot* rely on speculation about the unfettered choices made by independent actors not before the courts." *All. for Hippocratic Med.*, 602 U.S. at 383 (citation modified) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 n.5 (2013)). Here, the only conduct Chief Williams could have engaged in—that would injure Plaintiffs—was applying to be the fire chief. Governor Landry, an independent actor, who, for reasons stated above, is no longer before the Court had "unfettered choice" in appointing Chief Williams. Thus, Plaintiffs cannot show an independent act by Chief Williams caused their alleged harm.

Since Plaintiffs cannot show Chief Williams substantially caused their alleged harm, they do not have standing to sue Chief Williams. Consequently, the Court does not have subject matter jurisdiction over those claims, and, accordingly, Chief Williams's Motion is **GRANTED** as to lack of jurisdiction.

---

[28] [Doc. No. 18-1, p. 7].

To sum, Plaintiffs have failed to establish that they have Article III standing to sue any of the listed Defendants. Therefore, the Court concludes it does not have subject matter jurisdiction over Plaintiffs claims against Defendants.

### III.    12(b)(6) Motions for Failure to State a Claim

Since the Court has concluded that it does not have subject matter jurisdiction over Plaintiffs claims, it does not—because it cannot—address Defendants Motions, arguing that Plaintiffs have failed to state a claim for which relief can be sought.

Accordingly, those Motions are **DENIED AS MOOT**.

### IV.    Conclusion

For the above-stated reasons,

**IT IS ORDERED**, **ADJUDGED**, **AND DECREED** that the Motions to Dismiss for lack of subject matter jurisdiction filed by Defendants, Governor Landry and Chief Williams [Doc. Nos. 8, 25] are **GRANTED**, and the claims asserted by Plaintiffs against Governor Landry and Chief Williams are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Motion to Dismiss [Doc. No. 6] filed by Defendant Friday Ellis is **GRANTED**, and Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED**, **ADJUDGED**, **AND DECREED** that the Motions to Dismiss for failure to state a claim filed by Defendants, Governor Landry, Mayor Ellis, and Chief Williams [Doc. Nos. 6, 8, 25] are **DENIED AS MOOT**.

MONROE, LOUISIANA, this 23rd day of March 2026.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE